UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Crestmark Financial Corp.,

    Plaintiff(s),

v.

OMO Science, Energy and Technology, Inc., Gerald D. Hill, Max E. Stoner, and James M. Riddick,

    Defendant(s).
_____/

Case No. 10-11795

Honorable Nancy G. Edmunds

# ORDER DENYING DEFENDANT MAX E. STONER'S
# MOTION TO TRANSFER VENUE [10]

Defendant Max E. Stoner ("Stoner") moves to transfer this matter to the United States District Court for Maryland pursuant to 28 U.S.C. § 1391(a) and 28 U.S.C. § 1404(a). For the reasons stated below, the Court DENIES Stoner's motion.

**I.   Facts**

**A.  The Parties**

Plaintiff, Crestmark Financial Corp. ("Plaintiff"), is a Michigan corporation with its principal place of business in Michigan. (Compl. ¶ 3.) Defendant OMO Science, Energy and Technology, Inc. ("OMO") is a Texas corporation with its principal place of business in Maryland. (Compl. ¶ 4; Stoner Aff. ¶ 2, Def.'s Mot. to Transfer, Ex. B.) Defendant Gerald D. Hill ("Hill"), OMO's president, is an individual residing in Texas. (Compl. ¶ 6; Stoner Aff. ¶ 3, Def.'s Mot. to Transfer, Ex. B). Stoner, a minority investor in OMO, is an individual residing in Pennsylvania. (Compl. ¶ 7; Stoner Aff. ¶ 5, Def.'s Mot. to Transfer,

Ex. B). Defendant James M. Riddick ("Riddick") is an individual residing in Delaware. (Compl. ¶ 8; Stoner Aff. ¶ 4, Def's Mot. to Transfer, Ex. B).

**B. The Action**

Plaintiff filed a complaint against OMO, Hill, Stoner, and Riddick in this district on May 3, 2010. (Compl. at 1.) The Complaint alleges: breach of contract against OMO; breach of guaranty against Hill, Stoner, and Riddick; action on security interest against OMO; and fraud against OMO, Hill, Stoner, and Riddick. (Compl.) The Complaint stems from an Accounts Receivable Purchase and Security Agreement (the "Purchase Agreement") and several guaranties for the Purchase Agreement that the parties executed.

On October 18, 2008, Plaintiff and OMO entered into the Purchase Agreement. (Def.'s Mot. to Transfer at 2; Pl.'s Resp. at 2.) The Purchase Agreement provided that Plaintiff could purchase accounts receivable from OMO and, following, could take a security interest in all of OMO's accounts receivable and personal property (the "Collateral"). (Def.'s Mot. to Transfer at 2; Pl.'s Resp. at 2.) The Purchase Agreement also contained a Michigan choice of jurisdiction and venue clause. (Purchase Agreement, Def.'s Mot. to Transfer, Ex. D, ¶ 30; Pl.'s Resp. at 3.)

In concert with the Purchase Agreement's execution, Hill signed the Purchase Agreement as "Guarantor" and Stoner and Riddick each signed the Purchase Agreement as a "Validity Guarantor." (Def.'s Mot. to Transfer at 2-3; Pl.'s Resp. at 4.) Stoner also signed a separate "Validity Guaranty" in which he covenanted and guarantied that all "cash receipts, checks or payments of any nature relating to proceeds of purchased accounts receivable shall be forwarded to [Plaintiff] as long as any Indebtedness is outstanding."

2

(Stoner Validity Guaranty, Def.'s Mot. to Transfer, Ex. F; Compl. ¶ 13)  Stoner also agreed to "be personally liable to [Plaintiff] for any damages suffered by [Plaintiff] as a result of a breach of [the Purchase Agreement]."  (*Id.*)

Plaintiff took advantage of the Purchase Agreement and purchased various invoices (the "Invoices") from OMO totaling $149,472.75.  (Def.'s Mot. to Transfer at 3; Pl.'s Resp. at 5.)  In 2009, OMO breached the Purchase Agreement by collecting the amounts owing on the Invoices and not delivering the funds to Plaintiff. (Def.'s Mot. to Transfer at 3; Pl.'s Resp. at 6.)  On November 18, 2009, Plaintiff declared OMO to be in default, as defined by the Purchase Agreement, and demanded payment from OMO and Hill on all amounts due and owing to Plaintiff, (the "Indebtedness"), and demanded the Invoices amounts from Stoner and Riddick.  (Def.'s Resp. at 6.)

On August 27, 2010, default judgments were entered against Hill, Riddick, and OMO. (Docket Text ## 30, 31, 32.)

### C.  Motion to Transfer Supporting Facts

In attempting to persuade this Court to transfer this matter to the District Court of Maryland, Stoner highlights the following facts:

- OMO's principal place of business is in Baltimore, Maryland.  (Stone Aff., Def.'s Mot. to Transfer, Ex. B, ¶ 2.)

- All of OMO's daily business operations and all the potential witnesses that conducted the daily business operations are located in or around Baltimore, Maryland.  (*Id.* ¶¶ 9, 12-15.)

- All of OMO's business records are stored in Baltimore, Maryland. (*Id.* ¶ 10.)

- All of OMO's assets and personal property are located in Baltimore, Maryland (*Id.* ¶ 8.)

3

- Neither OMO nor Stoner conducts any business in Michigan. (*Id.* at ¶¶ 16, 17.)

- Stoner would suffer a financial hardship if he had to litigate in Michigan. (*Id.* at ¶¶ 19, 20.)

- Stoner would be inconvenienced if he had to litigate in Michigan and he would not have any means to require those witnesses located around Baltimore, Maryland, to testify. (*Id.* at ¶ 21.)

Plaintiff offers its own facts in support of denying the transfer request:

- Plaintiff's corporate headquarters is in Troy, Michigan. (Matheson Decl., Pl.'s Resp., Ex. A, ¶ 2).

- The corporate headquarters manages the Plaintiff-OMO relationship. (*Id.*)

- All of Plaintiff's witnesses reside and/or work in the Detroit area. (*Id.* ¶ 4.)

- All of Plaintiff's documents are stored electronically at the corporate headquarters. (*Id.*)

## II. Standard of Review

To obtain a transfer of venue, the moving party has the burden of showing "that the balance of convenience ... strongly favor[s] [the transfer]." *Comshare, Inc. v. Execucom Systems Corp.*, 593 F.Supp. 981, 985 (E.D.Mich.1984) (emphasis added). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The district court deciding a § 1404(a) motion to transfer "has broad discretion to grant or deny" that motion. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir.1994) (internal quote and citation omitted). As a threshold issue, the movant must show that the action could have been brought in the proposed transferee

4

district. *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F.Supp.2d 943, 946 (E.D.Mich. 2003). After that threshold showing, a court must evaluate whether a transfer would "promote the interests of justice" and "serve the parties' and witnesses' convenience." *Id.* Courts may consider any factor that makes trial "easy, expeditious, and inexpensive." *Grand Kensington, LLC v. Burger King Corp.*, 81 F.Supp.2d 834, 836 (E.D.Mich. 2000) (citation omitted). Specific factors that have guided courts' "interest of justice" and "convenience" determinations include:

> (1) the convenience of witnesses; (2) the location of relevant documents and relevant relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F. Supp.2d 809, 811 (E.D. Mich. 2000) (internal quote and citation omitted). It is the moving party's burden to show that § 1404(a)'s requirements are satisfied. *Amphion*, 285 F.Supp.2d at 946. The moving party must make this showing by a preponderance of the evidence. *Perceptron, Inc. v Silicon Video, Inc.*, 423 F.Supp.2d 722, 729 (E.D.Mich. 2006.)

### III. Analysis

For Stoner to persuade the Court that a transfer is proper, therefore, he must show that Plaintiff could have brought the matter in Maryland and that the interests of justice and convenience to the parties and witnesses warrant such a transfer.

**A. Plaintiff Could Have Brought the Action in Maryland**

In a diversity action, venue is proper in a "judicial district where any defendant resides ... [or] judicial district in which a substantial part of the events or omissions giving rise to the

5

claim occurred." 28 U.S.C. § 1391(a) (2000). Because Defendant OMO's principal place of business is in Maryland, Plaintiff could have brought this action in the United States District Court for the District of Maryland. *See Perceptron,* 423 F.Supp.2d at 729. Seeing that Plaintiff could have brought this action in Maryland, the Court must determine whether a transfer would promote the interests of justice and be more convenient for the parties and witnesses.

### B. The Interests of Justice and Convenience Favor the Eastern District of Michigan

Stoner offers several reasons why the interests of justice and convenience favor a transfer to the District of Maryland. The theme that runs through his reasons is that litigating in Michigan would be inconvenient–for the witnesses, him, access to documents, and trial efficiency. But, "[a] transfer is not appropriate" to "shift the inconvenience from one party to another." *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F.Supp.2d 1014, 1023 (E.D. Mich. 2002). Plaintiff has initiated this matter in this district and a court must give deference to a plaintiff's choice and should not disturb it unless a defendant "overcomes the presumption that the plaintiff has chosen the proper forum." *Grand Kensington*, 81 F.Supp.2d at 836 (internal citation omitted). Here, Stoner fails to overcome the presumption. If this Court were to transfer this action, it would be shifting the inconvenience of litigating this matter from Stoner to Plaintiff; such a shifting is "impermissible." *Id.* (Internal citation omitted.)

#### 1. Witnesses' Convenience Favors Plaintiff

Witnesses' convenience is "probably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C. § 1404(a)."

6

*Perceptron*, 423 F.Supp.2d at 729 (citation omitted). In weighing this factor, the location of key witnesses is more important than the location of a larger number of less important witnesses. *Thomas v. Home Depot, U.S.A., Inc.*, 131 F.Supp2d 934, 937 (E.D. Mich. 2001) (citation omitted). Because this factor is so important, parties should provide each witnesses' name and an outline of the material testimony each witness will provide. *Id.* (Citation omitted.)

Here, neither party has persuaded the Court of the importance, through proposed material testimony, of any potential witnesses, aside from stating that the offered witnesses are important. Stoner contends that the Court must transfer the case to Maryland because potential witnesses are located there and a trial in Michigan would inconvenience them. (Def.'s Mot. to Transfer at 7.) Plaintiff counters that its witnesses reside in the Detroit area. (Matheson Decl., Pl.'s Resp., Ex. A, ¶ 4). Although neither Plaintiff nor Stoner give explicit details as to witnesses' importance, Plaintiff's corporate headquarters did manage the Plaintiff-OMO relationship. (*Id.* ¶ 2.) The Court would suspect that that relationship would provide key witnesses. Stoner alleges that the key witnesses in this case are Cornelious Jones, who ran OMO's daily business operations, Mr. Jones's administrative assistant, a part-time accountant, and a part-time sales manager, all who live in the Baltimore area. (Def.'s Mot. to Transfer at 7.) Plaintiff fails to see how these witnesses would play a role in the defense of this action. (Pl.'s Resp. at 9.) Here, Plaintiff has alleged breach of contract, breach of guaranties, action on security interest, and fraud against four specific defendants–OMO and the individuals that guarantied the Purchase Agreement as well as had the power to fulfill the terms of, and ultimately breach, the Purchase Agreement. The Court agrees with Plaintiff and fails to see how the Complaint has anything to do with

OMO's staff and record keeping. Stoner's witnesses' convenience argument, at best, is just as valid as Plaintiff's. This factor, therefore, weighs in Plaintiff's favor and in favor of denying a transfer of venue.

### 2. Parties' Convenience Favors Plaintiff

Stoner claims Maryland is more convenient; Plaintiff claims Michigan. Stoner states that he is on a fixed income and that defending this matter in Michigan would cause him a financial hardship. (Stoner Aff., Def.'s Mot. to Transfer, Ex. B, ¶¶ 20, 21.) Although the Court recognizes that financial hardship is a legitimate consideration, a conclusory statement of financial hardship is not sufficient. *Thomas*, 131 F.Supp.2d at 937 (citation omitted). Stoner has provided the Court with his income and a statement that traveling from Pennsylvania to Michigan would impose too heavy a burden on him. But, such a conclusory statement is not sufficient, especially when Stoner will be traveling regardless of where he defends this action. *Id.* The Court, therefore, does not find this factor necessitates a transfer of venue to Maryland. One party, ultimately, will suffer an inconvenience. But again, since this Court cannot shift the inconvenience from one party to another without Stoner sufficiently persuading the Court that justice and convenience to the parties and witnesses warrant a transfer, this factor favors Plaintiff. *Izumi*, 204 F.Supp.2d at 1023.

### 3. Location of Relevant Documents and Relative Ease of Access to Sources of Proof

Stoner, in addition, claims that transfer is warranted because OMO's business records are located in Maryland. (Def.'s Mot. to Transfer at 7.) In today's technologically advanced world, with parties' abilities to fax, scan, and electronically mail documents, this factor carries little weight and favors neither Plaintiff nor Stoner. *Wayne County Employees'*

8

*Retirement System v. MGIC Inv. Corp.*, 604 F.Supp.2d 969, 976 (E.D. Mich. 2009) (citations omitted).

### 4. Judicial Efficiency

Stoner finally contends that a transfer would serve judicial efficiency by his receiving a speedier trial date and by the fact that Plaintiff would ultimately have to enforce a judgment against OMO's property in Maryland. (Def.'s Mot. to Transfer at 9.) In support of this contention, he offers the "Federal Court Management Statistics for 2009" caseload profiles for the Eastern District of Michigan and the District of Maryland. (*Id.*, Ex. H.) This offering does little to support Stoner's request to transfer. The caseload profile shows that the Eastern District of Michigan median time to trial is 27.5 months; the District of Maryland's median time to trial is 26.4 months. (*Id.*, Ex. H.) The Court does not find a 1.1-month difference persuasive. The Court also rejects Stoner's argument that Plaintiff would have to enforce any judgment in Maryland as a reason to transfer. *See Ameli-Tehrani v. Whiteman*, No. 09-14126, 2010 WL 743515, at *5 (E.D. Mich. Feb. 26, 2010). Without any persuasive arguments that a transfer to the District of Maryland would serve judicial efficiency, the Court finds that this factor favors Plaintiff.

## IV. Conclusion

Because Stoner has failed to persuade the Court that the interests of justice and convenience to the parties and witnesses warrant a transfer of this matter to the District of Maryland, Stoner's Motion to Transfer Venue is DENIED.

                                        s/Nancy G. Edmunds
                                        Nancy G. Edmunds
                                        United States District Judge

Dated: September 16, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 16, 2010, by electronic and/or ordinary mail.

                                       s/Carol A. Hemeyer
                                       Case Manager